# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

In Re:                                          )
                                                )   Case No. 13-51143-705
SAINT LOUIS CONNECTCARE,                         )
A Non-Profit Corporation                         )   Chapter 7
                                                )
            Debtor.                              )   Hearing date:  February 6, 2014
                                                )    Hearing time:  9:30 a.m.

## MOTION TO SELL ASSETS AT PUBLIC AUCTION AND PRIVATE SALE

COMES NOW Seth A. Albin, Trustee herein, by and through his counsel, and for his

Motion to Sell Assets at Public Auction and Private Sale ("Motion"), states that:

1        Saint Louis Connectcare ("Debtor") filed its Voluntary Petition for Relief under

Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. ["the Code"] on

December 16, 2013.

2        Seth A. Albin ("Trustee") is the duly acting Chapter 7 Bankruptcy Trustee in this

matter.

3        Debtor was a not for profit healthcare provider that offered various emergency and

other medical services largely to those who did not have health insurance.  Much of the funds of

the Debtor were derived from government payments, such as through Medicaid and Medicare.

4        Among the assets of the estate are tangible physical assets consisting of

machinery, equipment, vehicles, fixtures, supplies and inventory (the "Assets").

5        Contemporaneously with this Motion, Trustee is seeking the employment of Solid

Asset Solutions LLC ("SAS") to sell the Assets through a public auction and, to the extent

required, through private sales.   SAS has the expertise to conduct the sale of these Assets.

6       SAS has agreed to render services as directed by Trustee at the commission rate of six percent (6%) of net aggregate proceeds, plus a buyer's premium of ten percent (10%) of cash sales or thirteen percent (13%) of credit card sales, with an expense budget not to exceed $12,920, which will be inclusive of any bond premium to be paid.  A copy of the SAS Agreement is set forth as Exhibit 1 (the "Agreement"), attached hereto and incorporated herein by reference.

7       The Trustee proposes to sell the estate's interest in the Assets via an orderly public sale at Debtor's premises followed, an online/onsite simulcast auction, and/or a series of private sales (the "Sale") as soon as practical following the Court approving the Sale and issuing the Order granting same, on an "AS IS, WHERE IS, WITH ALL FAULTS" basis, with no representations, warranties, or guarantees, free and clear of any liens or encumbrances, pursuant to 11 U.S.C. § 363.  Inspections shall be held prior to the Sale at the same location.   It is contemplated that the Sale will take approximately four weeks.

8       As the Sale is pursuant to 11 U.S.C. § 363, any and all liens or encumbrances on the Assets shall attach to the proceeds of the Sale.  To the extent any such liens or encumbrances exist, Trustee seeks authority to pay any and all validly perfected liens and encumbrances from the proceeds of Sale.

9       Within twenty (20) days after the completion of the Sale, SAS shall provide the Trustee with records detailing the purchase price of each item, including copies of written receipts for all sales.

10       All proceeds from the Sale and the buyer's premium shall be deposited into accounts controlled by SAS. Within twenty (20) days after completion of the Sale, SAS and the Trustee shall reconcile and settle all proceeds from the sale of the Assets.  Within such twenty

(20) day period, SAS shall deduct its expenses, and remit the remaining balance in immediately available funds, all amounts due to the Trustee under this Agreement.  All amounts due and/or paid to SAS under this Agreement shall be free and clear of all liens, claims and encumbrances by the Trustee.

11       All purchasers of Assets shall be required to pay for the Assets by wire transfer of immediately available funds, credit cards, cash, or by certified or bank check.  No Assets shall be delivered to, or picked up by, any purchaser until such payment has been received, and all purchased Assets must be completely picked up and removed as agreed upon at the time of the applicable Sale (as the case may be), it being agreed by SAS that such pickup and removal period shall not extend beyond the Sale Termination Date.  SAS will issue written receipts to each purchaser showing in reasonable detail the asset(s) purchased and the price paid.  Copies of all receipts will be provided to the Trustee within twenty (20) days of the conclusion of the Sale.

8.       Trustee believes that the proposed fees and expenses are reasonable considering the magnitude and complexity of the sale, and that it is in the best interest of this estate that he be authorized to sell the Assets on the terms described herein.

10.      Trustee requests that the Court waive any and all applicable stays of an Order approving this Motion, including but not limited to the fourteen (14) day stay of order which is required by Federal Rule of Bankruptcy Procedure 6004(g) so that the Sale can be expedited and accomplished without further delay.

11.      The Trustee further requests relief restricting and preventing all utility companies, landlords, subtenants, governmental agencies, sheriffs, marshalls or other public officers, creditors and other parties in interest from interfering with the Sale by SAS.

WHEREFORE, the Trustee respectfully requests this Honorable Court make and enter its Order: (i) approving this Motion and the Agreement; (ii) waiving any and all stays applicable to an Order approving this Motion such that the Order shall become final immediately upon entry in this Court's docket; (iii) authorizing the Trustee to sell the Assets in accordance with the Agreement on an "AS IS, WHERE IS" basis, with no representations or warranties of any kind, free and clear of any liens or encumbrances pursuant to 11 U.S.C. § 363; (iv) authorizing him to take any and all steps necessary to accomplish the foregoing; (v) authorizing SAS to hold any funds received from the auction of the Assets in trust for the bankruptcy estate pending turnover such funds to the bankruptcy estate as soon as is reasonably possible under the circumstances; (vi)  ordering that  any liens and encumbrances attach to the proceeds of the Sale to be distributed as soon as reasonably possible after the Sale; (vii) authorizing the Trustee to incur expenses not to exceed the expenses set forth in the Agreement; (viii) authorizing the Trustee to pay SAS from the proceeds of the sale, its commission as set forth in the Agreement; (ix) authorizing the Trustee and/or SAS to sell any remaining Assets by private sale without further hearing or Court approval; (x) restricting and preventing all utility companies, landlords, subtenants, governmental agencies, sheriffs, marshalls or other public officers, creditors and other parties in interest from interfering with the Sale by SAS; and (xi) authorizing such other action consistent with the relief requested herein.

SUMMERS COMPTON WELLS LLC


Date:  January 31, 2014                    By: /s/ David A. Sosne
                                          David A. Sosne, #28365MO
                                          Bonnie L. Clair, #41696MO
                                          Brian J. LaFlamme #49776MO
                                          Attorneys for Trustee
                                          8909 Ladue Road
                                          St. Louis, Missouri  63124
                                          (314)991-4999/(314)991-2413/FAX
                                          dasattymo@summerscomptonwells.com
                                          blcattymo@summerscomptonwells.com
                                          blaflamme@summerscomptonwells.com


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via electronic filing in the CM/ECF system of the United States Bankruptcy Court for the Eastern District of Missouri to the parties requesting service by electronic filing.  I hereby also certify that a copy of the foregoing was served via United States Mail, first class postage prepaid, on the date of the electronic filing of this document to those individuals and entities not requesting service by electronic filing.  The individuals and entities being served electronically or by mail are:


United States Department of Justice          Eric C. Peterson
U.S. Trustee's Office                        Greensfelder, Hemker & Gale, P.C.
111 S. 10th Street, Ste. 6353                10 S. Broadway
St. Louis, MO 63102                          Suite 2000
                                             St. Louis, MO 63102
Seth A Albin
Stewart, Mittleman, Heggie & Henry           Steve Roemer
222 South Central Avenue, Suite 501          Solid Asset Solutions LLC
St. Louis, MO 63105                          550 Frontage Road #3725
                                             Northfield, IL 60093


January 31, 2014                             /s/ Christina L. Hauck

**SAS**

**Solid Asset Solutions**
Asset Liquidation, Appraisal, Advisory

EXHIBIT 1

January 22, 2014

Mr. Seth Albin
Trustee for St Louis ConnectCare
c/o Stewart, Mittleman, Heggie, Henry & Albin, LLC
222 S. Central, Suite 501
St. Louis, Missouri 63105-3575

Via email: salbin@smhhlaw.com

RE: AGREEMENT TO ACT AS SALES AGENT FOR ASSETS OF ST LOUIS
CONNECTCARE

This letter shall serve as the agreement (the "Agreement") between Solid Asset Solutions
LLC and its affiliated entities ("SAS") and Seth Albin - not individually but solely in his
capacity as Trustee in the Chapter 7 Bankruptcy Case 13-51143 pertaining to St Louis
ConnectCare ("Company"). Trustee desires that SAS liquidate the machinery, equipment,
vehicles, fixtures, supplies, inventory and other owned tangible assets that existed during SAS's
site visit on January 9, 2014 (the "Assets[1]") to Company's location at 5535 Delmar Blvd in St
Louis, Missouri  (the "Location").

SAS, at its discretion, will sell the Assets via an orderly sale followed by an online/onsite
simulcast auction if necessary, free and clear of liens and claims (the "Sale").  The Trustee shall
permit SAS to conduct a sale and/or auction of the Assets at the Location.

The Trustee shall file a motion seeking, and shall receive prior to the Sale
Commencement Date, entry of a sale order authorizing the sale of the Assets by SAS pursuant to
section 363of the Bankruptcy Code (the "Order") upon the usual and customary terms of the
United States Bankruptcy Court for the Eastern District of Missouri.

1.    <u>Sale Term</u>.

The Sale shall commence on or about January 27, 2014 or as soon as practical following
the Court approving the Sale and issuing the Order (the "Sale Commencement Date") and shall
terminate approximately four (4) weeks thereafter.With Trustee's approval, which will not be
unreasonably withheld, SAS may extend or abbreviate the sale term as deemed in the best
interests of the overall net benefit for the Trustee. The final day of the Sale shall be referred to as
the Sale Termination Date, and the period commencing with the Sale Commencement Date and

---

[1] The Assets shall include those that are owned by Debtor free and clear of liens of any secured creditors.   At
Trustee's option, the Assets may also include liened or leased Assets, provided that the lessors or secured creditors
consent to the sale and agree to the payment of SAS as set forth herein.

continuing through and including the Sale Termination Date shall be referred to as the Sale Term.

2.    <u>Scope of Services</u>.

SAS shall conduct the Sale.  SAS will take reasonable and customary steps to advertise the Sale in a manner designed to attract qualified purchasers and will conduct the Sale in a business-like manner.  SAS shall set all operational policies and procedures for the Sale. Nothing contained herein shall prevent the Trustee from restricting access to such parts of the Location as the Trustee deems necessary for safety and security purposes.  The Trustee consents that the Sale may be conducted as a "sale of assets formerly owned by St Louis ConnectCare", "bankruptcy sale",or words of similar import. Trustee further consents that SAS may use any logos of the Company, and represents that it has the authority to give such consent.  Except as set forth herein, SAS shall make no other use of the name "St Louis ConnectCare" or any logos or trademarks of the Company.

Trustee and SAS acknowledge that some Assets might not sell, and therefore will be abandoned in place at the Location. Removal of unsold Assets, cleanout of the Facility, handling of hazardous materials, and any other activity not specifically contributing to the sale of Assets is deemed outside the scope of this Agreement.

3.    <u>Fees</u>.

For the Sale, the Company shall compensate SAS for its services in connection with the Sale as set forth below:

(A) SAS shall charge Trustee, and Trustee agrees to pay to SAS, a six percent (6%) commission on the sale of the Assets less the Expenses of sale (the "Agent's Sale Fee").

(B) SAS shall charge buyers of assets a customary buyer's premium that is common among asset sales such as the one contemplated herein. The buyer's premium is applied mostly to offset certain transactional expenses such as credit card fees, auction hosting fees, and other administrative expenses associated with executing sales transactions. The buyer's premium shall be equal to 13% of sales tendered by credit card and 10% of sales tendered by cash, wire, or bank certified check (the "Buyer's Premium"). For clarity, the buyer's premium collected for the sale of an Asset will be either 13% OR 10% … not both.

(C) In addition to the Agent's Sale Fee, the Trustee shall reimburse SAS for its actual and documented advertising and direct expenses associated with the Sale, including, but not limited to, third party supervisors/auctioneers/staff, disassembly, removal, bonding expenses, travel, bank fees and insurance expenses (the "Expenses") up to an amount not to exceed **$12,920** in aggregate (the (Expense Budget"). All Expenses will be reimbursed to SAS from proceeds resulting from the sale of Assets.

2

4.      Occupancy Expenses.

        The Trustee (not SAS) shall be responsible for all occupancy expenses associated with the Sale. The Trustee shall provide SAS, at no cost or expense to SAS whatsoever, with peaceful use and occupancy of, and reasonable access (including reasonable before and after hours access, manned security and camera surveillance, and normal utilities/internet service) to, the Location from the Sale Commencement Date through the Sale Termination Date for the sole purposes of preparing for, conducting (including inspection), and completing the Sale as contemplated hereby.

5.      Accounting.

(A)      Within twenty (20) days after the completion of the Sale, SAS shall provide the Trustee with records detailing the purchase price of each item, including copies of written receipts for all sales.

(B)      All Proceeds from the Sale and the Buyer's Premium shall be deposited into accounts controlled by SAS. Within twenty (20) days after completion of the Sale, SAS and the Trustee shall reconcile and settle all proceeds from the sale of the Assets. Within such twenty (20) day period, SAS shall deduct its Expenses,and remit the remaining balance in immediately available funds, all amounts due to the Trustee under this Agreement. All amounts due and/or paid to SAS under this Agreement shall be free and clear of all liens, claims and encumbrances by the Trustee.

(C)      All purchasers of Assets shall be required to pay for the Assets by wire transfer of immediately available funds, credit cards, cash, or by certified or bank check. No Assets shall be delivered to, or picked up by, any purchaser until such payment has been received, and all purchased Assets must be completely picked up and removed as agreed upon at the time of the applicable Sale (as the case may be), it being agreed by SAS that such pickup and removal period shall not extend beyond the Sale Termination Date. The Assets shall be sold to purchasers on an "AS IS, WHERE IS, WITH ALL FAULTS" basis. SAS will issue written receipts to each purchaser showing in reasonable detail the asset(s) purchased and the price paid, including the amount of sales tax paid. Copies of all receipts will be provided to the Trustee within twenty (20) days of the conclusion of the Sale.

6.      Representations, Warranties and Covenants.

(A)      The Trustee represents, warrants, and covenants to SAS as follows:

        (i)      The Trusteewill seek the employment of SAS as the liquidator/auctioneer of the Assets, the approval of this Agreement and the entry of the Order.

7.      Insurance.

(A)      From the Sale Commencement Date through and including the Sale Termination Date, SAS shall maintain its ordinary course comprehensive liability and property insurance policies.

3

1413156v2

(B)     SAS shall abide with the bonding requirements mandated by the Eastern District of Missouri for any party who might have possession of bankruptcy estate assets. Evidence of such bond will be made available to Trustee by SAS at Trustee's request at any point during the Sale Term.

8.     <u>Notices</u>.

Notices shall be delivered to the parties, in writing, at the addresses as shown below:

For SAS:                                  For the Trustee:
Steve Roemer                              Seth Albin
Solid Asset Solutions LLC                 Stewart, Mittleman, Hessie, Henry &Albin, LLC
550 Frontage Road, #3725                  222 S. Central, Suite 501
Northfield, IL 60093                      St. Louis, MO 63105-3575
steve@solidassetsolutions.com             salbin@smhhlaw.com

9.     <u>Contents of Agreement; Amendment; Parties in Interest; Assignment; Etc</u>.

This Agreement, which includes all exhibits hereto, sets forth the entire understanding of the parties hereto with respect to the subject matter hereof.  There are no restrictions, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to herein.  This Agreement supersedes all prior agreements and understandings between the parties.  This Agreement may be amended, modified or supplemented only by written instrument duly executed by each of the parties hereto. All representations, warranties, covenants, terms and conditions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective heirs, legal representatives, successors and permitted assigns of the parties hereto.  No party hereto shall assign this Agreement or any right, benefit or obligation hereunder to any other party without the written consent of the non-assigning party. Any term or provision of this Agreement may be waived at any time by the party entitled to the benefit thereof by a written instrument duly executed by such party.   Notwithstanding the foregoing, the Bankruptcy Court has the authority to amend, modify, revise or terminate this Agreement.

10.     <u>Rights of Abandonment</u>.

SAS shall have the right to leave any unsold Assets at the Location without liability or expense to SAS (whether asserted by the Company, Trustee, or by a third party against the Company, or by a third party against the Trustee).

11.     <u>Assumed and Excluded Liabilities</u>.

(A)     SAS shall not assume, or otherwise be responsible or liable for or obligated with respect to, any liabilities or obligations of the Company or Trustee with respect to the Assets, whether actual or contingent, accrued or unaccrued, matured or unmatured, liquidated or unliquidated, or known or unknown, arising out of occurrences prior to the Sale Termination Date ("Asset Liabilities"), except for any Asset Liabilities resulting from the negligence, breach

of contract, willful misconduct or unlawful conduct of SAS. Without limiting the foregoing, the Asset Liabilities include, without limitation, and SAS shall not assume nor bear any responsibility of any kind whatsoever with respect to, and specifically disclaims any liability for any and all of the following claims which any entity had, has, or at any time may have against the Company or Trustee, or any predecessor owner of the Assets: (a) all warranty or product liability claims related to, associated with or arising out of the ownership, operation, use or control of the Assets existing on, or as a result of the operations of, the Assets, before the Sale Termination Date; and (b) any violation of any hazardous material or other similar public protection law, regulation, or policy pertaining to the Assets or their use prior to the Sale Termination Date. In furtherance of the foregoing, it is expressly agreed and understood by Trustee that SAS is not responsible for, nor obligated to remove or dispose of, any hazardous garbage, materials, debris, or waste existing at the Location at any point before, during, or after the Sale Term.  Further, SAS shall not be responsible for the removal or disposal of any employee or business records.

(B)    In carrying out its duties and responsibilities under this Agreement, SAS will exercise due care per usual and customary standards and will perform such duties and responsibilities in accordance with applicable law and will take or engage in no actions in violation thereof.

12.    Employee/PatientRecords.

The Trustee is responsible for the handling and disposal of all employee and/or patient records at the Location in accordance with Federal, State or any other relevant law or regulations whatsoever.

13.    Severability.
Should any clause, Section or part of this Agreement be held or declared to be void or illegal for any reason, all other clauses, Sections or parts of this Agreement shall nevertheless continue in full force and effect.

*        *        *

1413156v2

**Agreed and Accepted:**
**As Trustee for St Louis ConnectCare:**

_____

Name:
Title:
Date:


**As SAS:**



_____

Name: Steve Roemer
Title: Principal & CEO, Solid Asset Solutions LLC
Date: January 17, 2014

1413156v2